THE STATE v. GEORGE W. FIELDER, alias WILLIAM FIELDER, Appellant.

Division Two, March 17, 1908.

1. **FRAUDULENT VOTING: Indictment: On Another's Name: Voter.** An indictment charging defendant with falsely and fraudulently attempting to vote in and upon a name not his own and in and upon the name of another living person, is not defective because it does not allege that the person whom defendant represented himself to be was at the time a voter.

2. ———: ———: ———: **Duplicitous.**   Nor is such an indictment duplicitous because it charges that defendant attempted to vote in and upon a name not his own, and attempted to vote in and upon a name of another person, whether such person were living or dead.   The two phrases in the statute mean practically the same thing and are not incongruous, and the indictment is not bad because it charges the offenses in the conjunctive.

3. ———: ———: ———: **No Charge of Ballot Given.**   The indictment charging defendant with a fraudulent attempt to vote on the name of another not his own is not bad because it does not charge that defendant was given, or that the judges of election delivered to him, or that he received, a ballot.   The indictment may charge, by way of inducement, that defendant falsely, fraudulently and feloniously applied for a ballot, which he did thereafter falsely and fraudulently offer and attempt to cast and to vote, and will not be bad, although he did not receive any ballot and the indictment does not charge that one was given to him.

4. ———: ———: ———: **Voter: Proof.**   Where it was unnecessary for the indictment to allege that the person whom defendant impersonated was a voter, the State is not bound to prove he was a voter.

5. ———: ———: ———: **Alive on Date of Election: Presumption.**   It is not necessary that the State prove that the person whom defendant is charged with having impersonated was alive on the date of the election.   Besides, where the official registration book shows that such person was registered for that election, the presumption will be indulged, nothing appearing to the contrary, that he was still alive at the time of the election.

6. ———: ———: ———: **Wanted to Vote and an Attempt To Vote: No Ballot: Instruction: Insufficient Evidence.**   When defendant appeared before the election officers he said he "wanted to vote."   They began interrogating him and had him write his name upon a slip of paper, and becoming satisfied that he was not the man he represented himself to be they at once had him placed under arrest.   He did not ask for or receive a ballot, nor did he offer or attempt to vote, and the most that can be said of his offense is that he fraudulently applied for a ballot in the name of another, with the intention of casting it and voting in said other's name.   But the gravamen of the charge is that he offered and attempted to cast said ballot and to vote at said election.   *Held,* that there is a wide distinction between wanting to vote and an offer or attempt to vote; *and,* as defendant had no ballot in his possession, he did not offer to

vote, and there was no evidence upon which to base an instruction which submitted to the jury the question of whether the defendant did "attempt or offer to cast a ballot and vote," and hence a verdict of guilty cannot stand.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams,* Judge.

REVERSED AND REMANDED.

*S. S. Bass* and *A. Hochdoerfer* for appellant.

(1) The motion to quash the indictment or the count thereof upon which appellant was tried and convicted should have been sustained, because said second count is insufficient and bad whether it is based upon sections 2360, 2115, 7178, Revised Statutes 1899, or upon section 2120k, Laws 1903, p. 155. (a) If said count is predicated upon section 2360, Revised Statutes 1899, and it is sought to charge an "attempt to commit an offense prohibited by law," then said count is bad, because it is not averred or alleged that the party charged did "any act toward the commission of such offense," and did "fail in the perpetration thereof," or was "prevented" or "intercepted in executing the same." And because said count fails to set out the facts which constitute the alleged "attempt." State v. Smith, 119 Mo. 444; State v. Montgomery, 109 Mo. 645; State v. Scroggs, 170 Mo. 153; State v. Shelley, 166 Mo. 616; State v. O'Brien, 168 Mo. 404; State v. Nolan, 168 Mo. 446; State v. Dale, 141 Mo. 484; State v. Hefner, 129 N. C. 548; Thompson v. People, 96 Ill. 161; U. S. v. Ford, 34 Fed. 26, 3 Dill. 536. (b) If said count is bottomed upon section 2115, Revised Statutes 1899, and it is intended to charge as for an "attempt to cast an illegal vote," then said count is bad for failing to aver and allege among other things that the party charged did "then and there falsely . . . attempt to cast said ballot

and to vote at said general election," etc., "knowing that he is not entitled to vote at such election," or words the equivalent thereof. Sec. 2115, R. S. 1899. (c) If said second count is an effort to charge the offense of personation under section 7178, Revised Statutes 1899, then said count is bad and insufficient because, though it alleges and avers that the party charged "did . . . apply for a ballot . . . in and upon a name not his own, and in and upon the name of another person living," etc., it is not alleged that said "person living" was then and there a "voter" as now required by section 2120k, Laws 1903, p. 155. (d) If the said second count is drawn under section 2120k, Laws 1903, p. 155, it is bad and insufficient because, 1st, the indictment fails to allege that the person alleged to have been impersonated was a "voter;" 2nd, because it does not set out the facts constituting the alleged attempt to cast a ballot; 3rd, because of all the reasons urged, and the authorities cited under point 1 (a). (e) The said second count is bad because it charges a number of separate, distinct offenses, inconsistent and repugnant to each other, in one count. State v. Flint, 62 Mo. 393; State v. Gibson, 110 Mo. 100; State v. Fox, 148 Mo. 517; State v. Blakely, 184 Mo. 187; U. S. v. Quincy, 6 Peters 464. (f) The said second count is bad and insufficient because it is so uncertain, vague and indefinite that it does not inform the party charged of the nature and cause of the accusation against him. State v. Dale, 141 Mo. 288; State v. Huffman, 136 Mo. 65; State v. Miller, 132 Mo. 297; State v. Kruger, 134 Mo. 262; Blitz v. U. S., 153 U. S. 308. (2) The evidence on the part of the State did not show affirmatively, but failed to establish, that defendant had "applied for a ballot" or that he had received a ballot, or that he had "offered or attempted to cast a ballot and to vote." There was no evidence of any overt act. State v. Shelley,

166 Mo. 616.  (3)  The court erred in its instructions to the jury by declaring that "the defendant, George W. Fielder, alias William Fielder, is charged with the offense of attempting to vote in a name not his own."  Defendant is specifically charged with attempting to vote in the name of George Fielder.  It is not warranted by the language of the charge, nor is it predicated upon the evidence.  It assumes the existence of testimony not introduced.  The definition of the words, "attempt" and "offer" is wrong, misleading and prejudicial.

*Herbert S. Hadley,* Attorney-General, and *F. G. Ferris,* Assistant Attorney-General, for the State.

(1)  (a)  The indictment follows the language of the statute, and sets forth all the facts necessary to constitute the offense charged, and is sufficient. Laws 1903, p. 159, sec. 2120k.  (b)  The caption and form of the indictment are sufficient.  State v. Craft, 164 Mo. 631.  (c)  The second count of the indictment, on which the trial and conviction were had, charges but one offense.  State v. Fox, 148 Mo. 517.  (2)  (a) The instructions given by the court cover all the facts in the case, and are sufficient under the law.  (b)  Defendant's first exception to the giving of instructions is based on the general ground that the instructions do not properly declare the law, and do not cover all the law in the case.  It does not call the attention of the trial court to any matter of law arising in the case upon which the court failed to instruct, and therefore is insufficient on that subject.  An objection to the failure of the court to instruct on all the law of the case is not an objection to the instructions given. State v. West, 202 Mo. 128; State v. Foister, 202 Mo. 46.  (c)  Defendant's second objection to the giving of instructions by the trial court alleges error in defining the law of "attempt," by restricting his objection to one reason, and by assigning that defendant cannot

now complain of said instructions for other reasons. State v. McCarver, 194 Mo. 717. (d) The trial court in the first instruction properly defined the law of "attempt," as very clearly appears upon reading that instruction as a whole. State v. Smith, 119 Mo. 439; 1 Words and Phrases, pp. 621, 622, 623.

BURGESS, J.—On the 20th day of November, 1906, the grand jury of the city of St. Louis returned an indictment against the defendant, charging him, in two counts, with attempted fraudulent voting in the eighth precinct of the Fourth ward, in said city, at the general election held on the 6th day of November, 1906. At the February term, 1906, of the circuit court of said city, the defendant filed a motion to quash the indictment, which was overruled, and the State electing to try the defendant on the second count of the indictment, which charged the defendant with attempting and offering to vote in and upon a name not his own, the defendant was put upon trial, convicted and his punishment assessed at imprisonment in the penitentiary for the term of two years. After filing motions for new trial and in arrest, which were overruled, the defendant appealed.

The evidence on the part of the State tended to prove that there was a general election on the 6th day of November, 1906, and that on said day, in each ward and precinct in the city of St. Louis, Missouri, there was a general election held for the choice and election of certain State officers of this State and certain officers of said city. In the eighth precinct of the Fourth ward of said city the voting place was at No. 501 N. Fourteenth street, and was in charge of and conducted by certain election officials, among whom were Eugene A. Oulvey, John Zimmer and William Caldwell, as judges, and Otto Priess, as clerk of election. For use in said election, said election officials were provided

with and had the official registration · book from the election commissioner's office, also a copy thereof, for said precinct, and in which were written the names of all persons registered as electors of said precinct, as also the place of residence, color, age, nativity, length of time in precinct and in the city and State of each of such registered electors, and in said original book was also the signature of each person registered.    There was no registration for said election in said precinct after September 20, 1906.

In said registration book appeared the name and signature of one George Fielder, described as residing at 1517 Washington avenue, thirty-nine years of age, a native of Missouri, by avocation a clerk, resident three months in the precinct and two years in the city and State.    It appeared in evidence that said No. 1517 Washington avenue was a rooming house, kept by a Mrs. White, and that for a period of five or six weeks, from the first week in August to about the middle of September, 1906, one George W. Fielder roomed there, but was not a roomer at said house after said period of time, nor on said 6th day of November, 1906, and that defendant had not roomed there and was not the George W. Fielder who had roomed at said house.

Shortly after six o'clock in the afternoon of said election day, defendant appeared at said voting place in said eighth precinct of the Fourth ward of said city, and approached said judges · of election, and in response to a question of Mr. Oulvey, stated that his name was Fielder and that he resided at 1517 Washington avenue.    Mr. Oulvey turned to the original registration book, wherein he found the name George Fielder, and then asked the defendant questions as to his age, nativity, avocation, place of residence, etc., to each and all of which questions defendant responded in accordance with the entries in said registration book opposite the name George Fielder, except that he gave

his name as Will or William Fielder. Whereupon Mr. Oulvey said to defendant that the book showed the name of but one Fielder, and that the first or Christian name was George. The defendant replied that his name was George W. Fielder. Mr. Oulvey required defendant to write his name on a slip of paper, and immediately compared defendant's signature with the signature of "George Fielder" in the original registration book, and found that there was no resemblance between them. He so informed the defendant, and that, so far as he was concerned, he could not vote, and then gave the slip of paper with defendant's signature thereon to Mr. Zimmer, an associate judge of election, sitting near him. Mr. Caldwell, another judge of election, then took up the conversation with defendant. The defendant told Mr. Caldwell that he had been living for about a year at 1517 Washington avenue, and that the house was run by a man named Barton. Caldwell informed him that he, Caldwell, had been rooming at that house for over two years, and that it was run by a landlady for nearly two years, and told him to bring his landlady to identify him if he wanted to vote. Defendant then started to leave, but was arrested outside the door by a police officer, on request of one of said election officers.

Otto Priess, election clerk, testified that defendant, on presenting himself before the election judges, and in his conversation with Mr. Oulvey, said "that he wanted to vote." However, neither Oulvey nor Zimmer were willing to testify that defendant said that he wanted to vote or that he offered to vote. Mr. Caldwell testified that the defendant "insisted on voting," but on cross-examination he stated that his station was near the door of the voting place, that he did not hear what the defendant said to Mr. Oulvey and would not say that defendant said to Mr. Oulvey that he wanted to vote. Several police officers

testified that defendant, at the time of the trial, and from the month of July, 1906, was running a saloon at 719 High street, in the city of St. Louis, under the name of William Roberts; that he was known by that name, and that his general reputation for honesty was good.

The slip of paper on which the defendant had written his name for comparison with the signature of "George Fielder" in the registration book was identified and introduced in evidence, as was also the registration book, and both were submitted to the jury for examination.

There was no evidence offered by the defendant. At the close of the State's case, defendant asked for an instruction in the nature of a demurrer to the evidence, which was refused by the court, and defendant excepted.

On the 21st day of February, 1907, the defendant filed a motion to quash the indictment upon various grounds, but it will only be necessary to pass upon such of them as are insisted upon in the brief of defendant. The indictment is drawn under section 2120k, Laws 1903, page, 159, the count of the indictment under which the defendant was convicted being as follows:

"And the grand jurors aforesaid, upon their oath aforesaid, do further present:

"That on the sixth day of November, one thousand nine hundred and six, at the city of St. Louis aforesaid, and in each ward and election precinct of said city of St. Louis, a general election was had and held pursuant to the Constitution and laws of the State of Missouri, for the choice and election of certain State officers, to-wit, for the election of two judges of the Supreme Court, Superintendent of Public Schools, Railroad and Warehouse Commissioner, Representatives in Congress, State Senators, Representa-

tives in the State Legislature, four judges and a clerk of the circuit court of said city of St. Louis, of a judge of the probate court of said city of St. Louis, of a clerk of the circuit court for criminal causes of said city of St. Louis, of a judge, a clerk, a prosecuting attorney and an assistant prosecuting attorney of the court of criminal correction of said city of St. Louis, of a sheriff, a coroner, a recorder of deeds and a license collector of the said city of St. Louis, and for a justice of the peace and a constable for —— Justice of the Peace District of said city of St. Louis; and that then and there the name of George Fielder appeared on the official registers and books of registration of the eighth election precinct of the Fourth Ward of said city of St. Louis, which said name of George Fielder then and there purported to be the name of a duly registered voter and elector, and then and there, on the sixth day of November, one thousand nine hundred and six, at the city of St. Louis, at the said general election, one George W. Fielder, *alias* William Fielder, did appear at the polling place at the said eighth election precinct of the said Fourth Ward at said city of St. Louis, before the duly appointed, qualified and acting judges and clerks of election within and for the said election precinct of said ward, and did then and there *falsely, fraudulently and feloniously impersonate said George Fielder* (whose name, then and there, appeared on said official registers and books of registration as aforesaid), and did then and there falsely, fraudulently and feloniously apply for a ballot in and upon a name not his own, and in and upon the name of another person then and there living, to-wit, on the said name of George Fielder, and did then and there *falsely, fraudulently and feloniously offer and attempt to cast said ballot and to vote* at the said general election, and for the officers aforesaid, in and upon a name not his own, and in and upon the name of

another person living, to-wit, on the said name of George Fielder, then and there appearing on the official registers and books of registration of said election precinct, as aforesaid; contrary to the statute in such case made and provided, and against the peace and dignity of the State.''

It is said that the indictment is fatally defective because it does not allege that the person whom defendant represented himself to be was at the time a "voter." The indictment, however, is not drawn under that clause of the statute, but under that clause which makes it a felony for any person to falsely and fraudulently attempt or offer to vote in and upon any name not his own, or who shall attempt to vote upon the name of any other person living or dead. There are several distinct offences named in and embraced by this section of the statute, the violation of any one of which, without reference to any other, may form the basis for a criminal prosecution. The indictment charges the defendant with attempting to vote in and upon a name not his own, and in and upon the name of another person living, to-wit, George Fielder, whose name was on the books of registration. It may be conceded, as contended by defendant, that the pleader intended to charge the defendant with an attempt to vote in the name of said George Fielder, but we do not admit the contention that it was necessary to the validity of the act of the Legislature, or its efficacy, that it should set forth in minute detail everything that a person attempting to vote should do, or the acts constituting an attempt, as every voter or person who attempts to vote knows what the statute means when it says, "any person who shall attempt or offer to vote in or upon the name of any person," etc., shall be adjudged guilty of a felony. The act, as respects the offences therein named, is complete within itself, and

is not in any way controlled by or in conflict with section 2360, Revised Statutes 1899.

Nor do we think the indictment duplicitous, as contended. While the statute makes it a felony for any person to attempt or offer to vote in or upon any name not his own, or to attempt to vote in or upon the name of any other person living or dead, the two phrases mean practically the same thing, and are not incongruous; and the indictment is not bad because the offenses are charged in the conjunctive. Bishop says: "If, as is common in legislation, a statute makes it punishable to do a particular thing specified, 'or' another thing, 'or' another, one commits the offense who does any one of the things, or any two, or more, or all of them. And the indictment may charge him with any one, or with any large number, at the election of the pleader; employing, if the allegation is of more than one, the conjunction 'and' where 'or' occurs in the statute. 'The rule,' it was once observed, 'is undoubtedly limited in its application to cases where the offenses created in a statute are not repugnant.' And whatever be the form of the allegation, the proofs need sustain only so much of it as constitutes a complete offense." [Bishop on Statutory Crimes (3 Ed.), sec. 244.]

Defendant further contends that the indictment is bad because it does not charge that George W. Fielder, *alias* William Fielder, was given, or that the judges of election delivered to him, or that he received a ballot—without which he could not attempt to vote. This statute is not leveled at the fraudulent obtaining of a ballot, and it is only by way of inducement that the indictment alleges that the defendant falsely, fraudulently and feloniously applied for a ballot, which he did thereafter falsely and fraudulently offer and attempt to cast and to vote at said election. But the defendant did not procure a ballot, and hence, could

not "offer and attempt to cast said ballot," as alleged in the indictment.

At the close of the evidence the defendant asked the court to instruct the jury that, under the law, the evidence and the indictment, they must find the defendant not guilty, which the court declined to do, and the defendant saved an exception. Defendant now insists that the court erred in refusing said instruction, because the indictment does not allege that the person whom it alleges was impersonated was a "voter" on the 6th day of November, 1906. As we have already intimated, it was unnecessary to make such allegation in the indictment as it is not bottomed on that clause of the statute, and it necessarily follows that the State was not bound to prove that fact upon the trial.

Another contention is that the State failed to prove that the person alleged to have been impersonated, to-wit, George Fielder, was alive on the 6th day of November, 1906, as alleged in the indictment. But it makes no difference, under the statute, whether the person in or upon whose name defendant attempted to vote was living or dead at that time, and the mere fact that the indictment alleges that George Fielder was then living did not make it material, or necessary to be proven. Besides, the official registration book showed that said George Fielder was registered for that election, and having been alive at that time, the presumption will be indulged, nothing appearing to the contrary, that he was still alive at the time of the election.

The first instruction given for the State is claimed to be erroneous upon the ground that there was no evidence upon which to base it. It submits to the jury the question as to whether the defendant did "attempt or offer to cast a ballot and vote." The terms "offer" and "attempt" are practically the same in

meaning; one of the definitions given by Mr. Webster of the word "offer" is "attempt." Do the facts in evidence sustain the charge that the defendant offered and attempted to vote, and was there any evidence upon which to base said instruction? That the defendant was guilty of fraudulently applying for a ballot in the name of one George Fielder, with the intention of casting it and voting in said Fielder's name, may be true, but the gravamen of the offense with which the defendant stands charged in this case is the *offering and attempting to cast said ballot* and to vote at said general election. The defendant never procured a ballot, or had one in his possession, and, hence, could not have offered or attempted to vote upon it.

In the case of Morrison v. Springer, 15 Iowa, 1. c. 327, there is quoted with approval from Chase v. Miller, 41 Pa. St. 403, the following: "To 'offer to vote' by ballot is to present one's self, with proper qualifications, at the time and place appointed, and to make manual delivery of the ballot to the officers appointed by law to receive it. The ballot cannot be sent by mail or express, nor can it be cast outside of all Pennsylvania election districts and certified into the county where the voter has his domicile. We cannot be persuaded that the Constitution ever contemplated any such mode of voting; and we have abundant reason for thinking that to permit it would break down all the safeguards of honest suffrage. The Constitution meant, rather, that the voter, *in propria persona,* should offer his vote in an appropriate election district, in order that his neighbors might be at hand to establish his right to vote, if it were challenged, or to challenge if it were doubtful."

Between the expression of the defendant that he "wanted to vote" and an offer or attempt to vote there is a wide difference. The offer and attempt contemplated by the statute must be manifested by acts

which would result in the consummation of the particular offense but for the intervention of some circumstance independent of the will of the defendant.

The defendant did not ask for or receive a ballot; nor did he go before the judges of election and offer or attempt to vote in any way; but when he appeared before the officers holding the elections, and said he "wanted to vote," they began interrogating him, and had him write his name upon a slip of paper, and becoming satisfied that he was not the man he represented himself to be, they at once had him placed under arrest.

There was an absence of evidence that the defendant attempted or offered to cast a ballot and vote in the name of any person whomsoever, for which reason our conclusion is that said first instruction is erroneous and should not have been given.

The judgment is reversed, and the cause remanded.

All concur.